UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KERRY KOUROFSKY,
WAYNE NEWMAN
WILLIAM SPERR,

                              Plaintiffs,

                                                                                        <u>DECISION AND ORDER</u>

                                                                                        04-CV-6327L

                v.

GENENCOR INTERNATIONAL, INC.,

                              Defendant.
_____

      This is an action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. The three plaintiffs, Kerry Kourofsky, Wayne Newman, and William Sperr, allege that their former employer, Genencor International, Inc. ("Genencor"), terminated their employment in March 2003, on account of their age. Genencor has moved for summary judgment.

**BACKGROUND**

      Genencor is a company involved in biotechnology; it develops and sells biochemicals for use in various types of applications. All three plaintiffs previously worked at Genencor's

Manufacturing Support Group at its Lexington Avenue facility ("the Plant") in Rochester, where held the position of engineer until late 2002.

In late 2002, plaintiffs were assigned to new positions as Senior Manufacturing Supervisor. These reassignments occurred during a transition period in which Genencor was changing the Plant from a product and process development facility to a manufacturing plant. That transition was occasioned by Genencor's recent acquisition of certain product lines of another company, Rhodia, Ltd. ("Rhodia").

Also in conjunction with this transition, Genencor implemented a reduction in force ("RIF") for the purpose of cutting its operating costs. Ten positions at the Plant, including plaintiffs', were eliminated. On March 31, 2003, plaintiffs were notified of the decision to terminate them.

Each plaintiff was provided with a severance package that included six months' pay and other benefits, in exchange for their release of all potential claims against Genencor arising out of their termination. Genencor now concedes, however, that the releases are ineffective because Genencor failed to comply with certain requirements of the Older Workers' Benefit Protection Act ("OWBPA"), Pub.L. No. 101-433, 104 Stat. 978 (1990).

Following their receipt of right-to-sue letters from the Equal Employment Opportunity Commission, plaintiffs filed the complaint in this action on July 16, 2004. They assert claims for age discrimination under the ADEA and the New York State Human Rights Law, Exec. L. § 296, and a claim under the OWBPA.

**DISCUSSION**

**I. Summary Judgment in ADEA Cases**

An ADEA claim may be based on allegations of disparate treatment or disparate impact. *See Smith v. City of Jackson, Mississippi*, 544 U.S. 228, 238-40 (2005); *Maresco v. Evans Chemetics*, 964 F.2d 106, 115 (2d Cir. 1992). Plaintiffs' ADEA cause of action is premised on both theories. *See* Complaint ¶¶ 26, 28.[1]

ADEA disparate-treatment claims are analyzed using the same burden-shifting framework as that employed in cases under Title VII. *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003). First, plaintiff must establish a *prima facie* case of age discrimination by showing that: (1) he was over forty years old at the time of the relevant events; (2) he was performing satisfactorily; (3) he was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination based on the plaintiff's age. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

Once the plaintiff has made out a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory business rationale for its actions. When "the defendant has made a showing of a neutral reason for the complained of action, 'to defeat summary judgment ... the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Terry*, 336 F.3d at 138 (quoting *Stern v. Trustees of*

---

[1]The analysis of age discrimination claims under the New York State Human Rights Law is the same as that under the ADEA. *See James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000).

*Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001); *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). Plaintiff may meet this burden by showing, *inter alia*, that the employer's proffered reasons for its decision were false or that discrimination was the real motivation for the company's decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

The analysis is different for claims brought under a disparate-impact theory, which targets "practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). A plaintiff establishes a *prima facie* case of disparate impact by identifying a specific employment practice which, though facially neutral, has had an adverse impact on him as a member of a protected class. *See Smith*, 544 U.S. at 241; *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). Statistical data may be admitted to show a disparity in outcome between groups, but to make out a *prima facie* case the statistical disparity must be "sufficiently substantial" to raise an inference of causation. *Watson*, 487 U.S. at 994-95; *accord NAACP v. Town of East Haven*, 70 F.3d 219, 225 (2d Cir. 1995). In addition, "any statistics relied upon 'must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity' when combined with other evidence." *Malave v. Potter*, 320 F.3d 321, 326 (2d Cir. 2003) (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001), *cert. denied*, 535 U.S. 951 (2002)).

"[A]fter an employee establishes a prima facie case of disparate impact age discrimination under the ADEA, the burden of production shifts to the employer to assert that its neutral policy is based on a reasonable factor other than age." *Pippin v. Burlington Resources Oil And Gas Co.*, 440 F.3d 1186, 1200 (10th Cir. 2006) (italics omitted). Under this test, "the employer is not liable under

the ADEA so long as the challenged employment action, in relying on specific non-age factors, constitutes a reasonable means to the employer's legitimate goals." *Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134, 140 (2d Cir. 2006) (citing *Smith*, 544 U.S. at 243). "[T]he plaintiff bears the burden of persuading the factfinder that the employer's justification is unreasonable." *Id.* at 139 (citing *Pippin*, 440 F.3d at 1200). To survive a well-founded motion for summary judgment, then, an ADEA plaintiff asserting a disparate-impact claim must come forward with admissible evidence from which a rational factfinder could conclude that the employer's facially neutral policy was not based on reasonable, non-age factors.

**II. Application to this Case**

**A. Disparate Treatment**

Plaintiffs' disparate-treatment claim rests largely on their allegation that their immediate supervisor from 2002 until their termination, Kevin Dibel, discriminated against them on account of their age and that it was largely because of him that they were selected for termination. The details of these allegations are laid out in plaintiffs' affidavits.

Plaintiff Kourofsky states that he found Dibel "very difficult to work for," although he does not say why. Dkt. #34 ¶ 5. He also states that Dibel "had a clear animus" against plaintiffs, and that there was a "stark contrast in [the way in] which Mr. Dibel treated [plaintiffs] compared to the young college interns ... ." Dkt. #34 ¶¶ 37, 38. Kourofsky alleges that Dibel stated that "he wished he could get rid of [plaintiffs]" and that he engaged in "hostile treatment of [plaintiffs] on a nearly daily basis," Dkt. #34 ¶ 38, although again Kourofsky is short on specifics concerning the nature of this hostile treatment.

Newman essentially repeats Kourofsky's allegations, with a few additions. He states that "[d]uring one group meeting Mr. Dibel stated in sum and substance that if he had his druthers he would replace us all," that Dibel "was over-critical and hostile about [plaintiffs'] work," and that "he constantly sought out the young interns to praise and socialize with." Dkt. #35 ¶¶ 7-9. Newman also alleges that he "was set up to fail" in his position as Senior Manufacturing Supervisor because he was supposed to be supervising three other employees, but his schedule was such that Newman "would not even see [his] assigned crew for a couple of weeks at a time." Dkt. #35 ¶ 17. In addition, Newman alleges that although he had always been given "excellent reviews," he learned after his termination that Dibel had given him an "unfair appraisal" dated April 1, 2003. Dkt. #35 ¶ 20; *see* Dkt. #31 at 18-20.

Sperr's allegations are similar to Newman's. He alleges that Dibel "would make comments about how we would have to get away from the 'old school' way of doing things." Dkt. #27 ¶ 7. He, too, alleges that he discovered after his termination that Dibel had given him a negative performance appraisal dated April 1, 2003. Dkt. #27 ¶ 18; *see* Dkt. #31 at 50-52.

In support of its motion, Genencor contends that there is no evidence to show that plaintiffs' terminations were motivated by discriminatory animus. Defendant asserts that the mere allegation that Dibel was difficult to work for is not probative of age discrimination, and that in any event Dibel was not the decisionmaker with respect to plaintiffs' terminations.

Genencor has also proffered a legitimate, nondiscriminatory reason for its actions. It contends that plaintiffs' positions were eliminated based on a need to reduce expenses at the Plant. Genencor alleges that the Plant Manager, Patrick Ward, and his staff reviewed each position at the Plant which did not "touch the product," to determine whether the position was critical to the Plant's

- 6 -

operation, or whether the job functions of the position could be absorbed into other, existing positions. Ward Aff. (Dkt. #21-4) ¶¶ 23, 24. Based on that review, Ward selected ten positions for elimination, including all four Senior Manufacturing Supervisor positions. Ward states that he believed that the functions of that position could be absorbed by the Plant Manager and Operations Manager, and by senior crew members.

Since defendant has proffered a legitimate, nondiscriminatory reason for its actions, I will proceed to the ultimate issue of whether plaintiffs have presented sufficient evidence of pretext to give rise to a genuine issue of material fact. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant"); *Wado v. Xerox Corp.*, 991 F.Supp. 174, 187 (W.D.N.Y. 1998) (where defendant proffered legitimate, nondiscriminatory reasons for plaintiffs' terminations, court would "assume that [each plaintiff] ha[d] made out a *prima facie* case, and proceed to consider whether the plaintiff ha[d] presented sufficient evidence to create a triable issue of fact about whether Xerox's proffered reason [wa]s a pretext for discrimination"), *aff'd sub nom. Smith v. Xerox Corp.*, 196 F.3d 358 (2d Cir. 1999), *overruled on other grounds by Meacham*, 461 F.3d 134.

Applying the above-referenced standards here, and keeping in mind that on a motion for summary judgment, the Court's "task ... is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them," *Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir. 1994), I find that plaintiffs have presented enough evidence for their claims to withstand defendant's motion for summary judgment. Viewing the evidence before me in the light most favorable to plaintiffs, the non-moving parties, a reasonable

finder of fact could conclude that Genencor's proffered reason for plaintiffs' termination is false, and that it is a pretext for age discrimination.

First, both Newman and Sperr received generally negative performance appraisals that were apparently signed by Dibel on April 1, 2003, a day *after* they were told of their termination.[2] Not only was the negative tone of these reviews in contrast to plaintiffs' previous appraisals, which were mostly positive, but the timing of these appraisals seems odd, particularly in light of defendant's contention that plaintiff's performance levels were *not* a factor in the decision to terminate them.

Although "sudden and unexpected downturns in performance reports cannot, by themselves, provide the basis for a discrimination action," the Second Circuit has recognized that they may "work with other submitted proofs (such as biased remarks) to support a jury verdict of discrimination." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56-57 (2d Cir. 1998). *See also Testerman v. EDS Tech. Prods. Corp.*, 98 F.3d 297, 305 (7th Cir. 1996) ("a sudden decline in performance could reasonably support an inference that the later evaluation was a sham"). "This is particularly so when the employee only learns of the negative performance review after his termination, which 'a reasonable jury could conclude ... constitute[s] a post-hoc attempt to justify the ... decision.'" *Sklaver v. Casso-Solar Corp.*, No. 02-CV-9928, 2004 WL 1381264, at *8 (S.D.N.Y. May 15, 2004) (quoting *Aufdencamp v. Irene Stacy Cmty. Mental Health Ctr.*, 234 F.Supp.2d 515, 518 (W.D.Pa. 2002)).

That Genencor now claims that plaintiffs' positions were simply eliminated outright, without regard to their individual performance, does not mean that at the time, Ward and Dibel–unaware of what Genencor's later, after-the-fact justification for plaintiff's termination would be–might not

---

[2]Ward also signed the review forms on July 27, 2003.

have sought to lay the groundwork for a possible assertion that plaintiffs were selected for termination because they had not been performing their duties satisfactorily.

In addition, it might be viewed as suspect that plaintiffs were reassigned from the position of engineer to that of Senior Manufacturing Supervisor just a few months before their termination. According to Genencor, in the Fall of 2002, "four new positions entitled 'Senior Manufacturing Supervisor' were created for each of the plaintiffs and one other engineer." Defendant's Statement of Facts not in Dispute (Dkt. #21) ¶ 23. These positions were allegedly created in connection with Genencor's recent acquisition of the Rhodia product lines. Genencor contends that it created these new positions with the aim of "mov[ing] impacted employees into positions that would contribute to the success of the new operation." *Id.* ¶ 22.

According to Genencor, though, the Rhodia acquisition was also what precipitated the RIF in which plaintiffs' positions were eliminated. Genencor contends that "some of the integration issues that arose from the acquisition of Rhodia" contributed to the pressures on Genencor to reduce costs. *Id.* ¶ 27. Ward states in his affidavit that he was directed in late 2002 to begin formulating methods to cut costs. Dkt. #21 Ex. 2 ¶ 18. A RIF was chosen as one such method, and the final decision on which employees to terminate was approved in February 2003. *Id.* ¶ 26. Ward states that he included all four Senior Manufacturing Supervisor positions among the ten positions to be eliminated at the Plant "because none of them 'touch the product'" and because their functions could be absorbed by other employees. *Id.* ¶ 27.

A reasonable factfinder might view it as paradoxical that Genencor created an entirely new position for plaintiffs to enable them to "contribute to the success" of the Rhodia acquisition, and then, within just a few months, decided that the new position was expendable, and that the very

acquisition that led to the creation of that position was a major reason for its elimination. While I recognize that "a transfer is essentially neutral" absent evidence that the decisionmaker knew at the time of the transfer that the new position was targeted for elimination, *Viola v. Philips Medical Systems of North America*, 42 F.3d 712, 718 (2d Cir. 1994), the fact that the creation of the new positions, plaintiffs' transition from engineer to Senior Manufacturing Supervisor, and the decision to implement a RIF and ultimately to eliminate those very positions all occurred contemporaneously is enough, in my view, to give rise to a genuine issue of fact about whether Genencor's proffered reason for eliminating those positions is pretextual.

"A plaintiff may also present statistical findings as circumstantial evidence of intentional discrimination." *Smith*, 196 F.3d at 370. Although statistics alone will generally not suffice to show discriminatory treatment against a particular plaintiff, "statistical evidence can be used along with other evidence to prove discriminatory intent." *Bussey v. Phillips*, 419 F.Supp.2d 569, 583 (S.D.N.Y. 2006) (citing *Catanzaro v. Weiden*, 140 F.3d 91, 96 (2d Cir. 1998)) (italics omitted).

Here, evidence supplied by Genencor's indicates that just prior to the RIF, there were 36 employees age 40 and older at the Plant, and 29 under age 40. Dkt. #21 Ex. 11. Thus, 55% of the employees fell into the protected category, and 45% did not.

In the RIF, eight of the protected workers were terminated, as were two of the younger employees. *Id.* The percentage of older workers thus declined to 51%. In addition, 22% of the workers in the protected group were selected for termination, versus 7% of the non-protected workers.

In support of its motion, Genencor contends that by the end of 2003, the percentage of age 40-and-above employees had rebounded to just over 55% (31 out of 56). *Id.*; Dkt. #21 ¶ 39. Though

that may blunt the force of plaintiffs' statistical evidence, I do not believe that it eviscerates it altogether. The fact remains that in the RIF itself, an older worker at the Plant was more than three times as likely to be terminated as a younger worker. Although these sample sizes are relatively small, I find that this evidence does support plaintiffs' claims of discriminatory treatment. *Cf. Maresco v. Evans Chemetics*, 964 F.2d 106, 113 (2d Cir. 1992) (finding that "[t]he decision to terminate two of the three older accounting employees, and none of the twenty younger employees, presents circumstances which give rise to an inference sufficient to withstand a motion for summary judgment that age was impermissibly considered in allocating the post-consolidation employment positions").

Finally, I note plaintiffs' allegations concerning Dibel, the gist of which is that Dibel treated plaintiffs harshly but doted on young interns, and that Dibel made comments about plaintiffs being from the "old school." Were this plaintiffs' only evidence, it is unlikely that their claims could withstand summary judgment. Combined with plaintiffs' other evidence, however, I find that it also supports their claims. *See Hayes v. Compass Group USA, Inc.*, 343 F.Supp.2d 112, 120 (D.Conn. 2004) (supervisor's reference to fifty-year-old district manager as "old school," and similar remarks, may not have been enough in themselves to support an inference of discrimination, but the record contained other indicia of discrimination and that evidence gave "more of an ominous significance to the remarks of Compass's decisionmakers"); *Ruscoe v. Housing Auth. of the City of New Britain*, 259 F.Supp.2d 160, 168 (D.Conn. 2003) (finding, in context of surrounding evidence, that there was "some ambiguity regarding the contextual interpretation of the terms 'old school' and 'sticking with the old guard,'" as used by interviewers during job application process, and stating that "[w]here, as here, there are choices to be made between conflicting interpretations of these statements, these

are matters for the jury, not for the court on summary judgment"). Although Genencor insists that Dibel had no input into the decision to terminate plaintiffs, I believe that these are matters best left for the jury to determine, particularly in light of Dibel's having signed Sperr's and Newman's negative performance appraisals on April 1, 2003, the day after they were informed of their termination.

Plaintiffs' evidence concerning discrimination is not the most compelling, but the Court recognizes that "smoking guns are rarely left in plain view," *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001), in these cases and that "'[e]mployers are rarely so cooperative as to include a notation in the personnel file' that the firing is for a reason expressly forbidden by law." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464-65 (2d Cir. 1989) (internal quotation marks omitted). Furthermore, the Second Circuit has recognized that in the appropriate case, evidence satisfying *McDonnell Douglas*'s minimal requirements of a *prima facie* case plus evidence from which a factfinder could find that the employer's explanation was false may be enough to present the case to a jury. *James v. New York Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). For the reasons stated, I find that this is such a case.

**B. Disparate Impact**

The complaint also purports to assert a claim of disparate impact. Complaint ¶ 28. This claim must be dismissed.

The Supreme Court has stated that "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is 'responsible for isolating and identifying the *specific* employment practices that are

allegedly responsible for any observed statistical disparities.'" *Smith v. City of Jackson, Mississippi*, 544 U.S. 228, 242 (2005) (quoting *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 656 (1989)) (alteration in original); *accord Meacham*, 461 F.3d at 139.

In the case at bar, plaintiffs have pointed to no such employment practice. They simply allege, in conclusory fashion, that "the involuntary reduction in force had a disparate impact against those employees over the age of forty ... ." Complaint ¶ 28. They do not identify any facially neutral policy that produced such a result, however.

Moreover, plaintiffs' specific factual allegations indicate that they are really alleging disparate treatment only. They allege that they were singled out for termination on account of their age because of Dibel's animus toward older workers, and because "defendant used *different* criteria for each group so that they [sic] would be able to *target* the older workers of each such group." Plaintiff's Memorandum of Law (Dkt. #28) at 6 (emphasis added). That simply does not amount to or support a claim of disparate impact. *See Khalil v. Farash Corp.*, ___ F.Supp.2d ___, 2006 WL 2708468, at *5 (W.D.N.Y. 2006) (plaintiffs' allegations presented "essentially a claim of disparate treatment, and plaintiffs' claims are therefore more properly subject to disparate-treatment, not disparate-impact, analysis") (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003)); *Wado v. Xerox Corp.*, 991 F.Supp. 174, 186 (W.D.N.Y. 1998) ("regardless of the label plaintiffs attach to their claims, they are at bottom disparate treatment claims only"), *aff'd*, 196 F.3d 358 (2d Cir. 1999).

### III. OWBPA Claim

Plaintiffs' third cause of action is brought under OWBPA, and is premised upon certain defects in the separation agreements and releases that were provided to and signed by each plaintiff.

As stated, Genencor concedes that the releases are not enforceable under OWBPA, but contends that the statute does not create an independent cause of action.

Plaintiffs respond that they "are not claiming separate damages under OWBPA," but are merely asserting that this action is not barred by their releases because the releases are ineffective. Plaintiffs' Memorandum of Law (Dkt. #28) at 6.

I agree that there is no right of action under OWBPA. *See Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1191 (10th Cir. 1999); *E.E.O.C. v. UBS Brinson, Inc.*, No. 02Civ.3748, 2003 WL 133235, at *3-*5 (S.D.N.Y. Jan. 15, 2003). Although plaintiffs are correct that the releases which they signed do not bar this lawsuit, that is not a proper basis for a separate cause of action. Accordingly, Genencor's motion for summary judgment is granted as to plaintiffs' third cause of action.

## CONCLUSION

Defendant's motion for summary judgment (Dkt. #21) is granted in part and denied in part. Plaintiffs' third cause of action under the Older Workers Benefit Protection Act is dismissed. In all other respects, defendant's motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
    October 23, 2006.